UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS ALEJO, DAVID BAKAL & JOSELINA MARMOL,

Plaintiffs,

-against-

DARNA RESTAURANT & YEHOUDA AVITAL,

Defendants.

09 Civ. 5436 (CM) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Colleen McMahon, United States District Judge:**

On November 1, 2010, Judge McMahon entered a default judgment for plaintiffs Carlos Alejo, David Bakal and Joselina Marmol against defendants Darna Restaurant and Yehouda Avital, and referred the case to me for an inquest as to damages. (Dkt. No. 10: Default Judgment; Dkt. No. 11: Order of Reference.)

For the reasons discussed below, the Court should enter judgment for plaintiffs against defendants, jointly and severally, for damages as follows: Alejo, $22,960.00; Bakal, $14,213.50; and Marmol, $8,253.00.

## FACTS

Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.)

(quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

**The Complaint**

The complaint (Dkt. No. 1) alleges as follows:

Defendant Avital owns the Darna Restaurant, which is located at 600 Columbus Avenue in Manhattan. (Compl. ¶¶ 2, 8-9.) Plaintiffs were employed by defendant Darna Restaurant as "servers, waiters, kitchen workers, bartenders, host, busboys, and/or general restaurant workers." (Compl. ¶ 2.)

Defendants did not notify plaintiffs of the tip credit provisions of the Fair Labor Standard Act ("FLSA") or the New York Labor Law, nor did defendants notify plaintiffs of defendants' intent to claim a tip credit against defendants' minimum wage obligations. (Compl. ¶¶ 19-20.)[1/] Plaintiffs did not receive any of the gratuities or tips (hereafter, tips) left by customers during the lunch shift; defendants retained all of those tips. (Compl. ¶ 24.) The lunch shift was from 11 a.m. to 4 p.m., and plaintiffs were paid $35 in cash (off the books) for each lunch shift. (Compl. ¶¶ 22-23.)

The dinner shift was from 4 p.m. to 11 p.m.; plaintiffs were not paid wages for dinner shifts but were paid a portion of the credit card tips (but no share of cash tips). (Compl. ¶¶ 22-23,

---

[1/] The FLSA minimum wage was $5.85 per hour between July 24, 2007 and July 23, 2008, and $6.55 per hour from July 24, 2008 to the present. (Compl. ¶ 15.) The New York Labor Law minimum wage after January 1, 2007 was $7.15 per hour. (Compl. ¶ 16.) See 29 U.S.C. § 206(a)(1)(A)-(B); N.Y. Labor Law § 652(1).

25-27.) For large parties, Darna included a 20% gratuity on the bill, but plaintiffs received only 12% of those tips. (Compl. ¶¶ 30-33.)

The complaint alleges that defendants' violations of the FLSA and New York Labor Law were willful. (Compl. ¶ 38.)

The complaint asserts claims for, inter alia, minimum wage violations and deprivation of tips under the FLSA and New York Labor Law. (Compl. ¶¶ 39-59.)

**Plaintiffs' Inquest Submissions**

In support of the default and inquest damages, each plaintiff submitted an affidavit giving further details about their employment at Darna Restaurant. (See Dkt. No. 8: Motion for Default Judgment, Ex. D: Alejo, Bakal & Marmol Affs.) Plaintiff Alejo stated that he worked for Darna from approximately March 20, 2008 to March 23, 2009. (Alejo Aff. ¶ 2.) Bakal worked for Darna from approximately July 2008 to February 23, 2009. (Bakal Aff. ¶ 2.) Marmol worked for Darna from approximately July 26, 2008 until November 26, 2008. (Marmol Aff. ¶ 2.) Each plaintiff was routinely paid less than the minimum wage and stated that Darna retained some or all of the tips left by customers. (Alejo Aff. ¶¶ 4-5; Bakal Aff. ¶¶ 4-5; Marmol Aff. ¶¶ 4-5.) Plaintiffs did not state in these affidavits how many shifts they worked, how much they were paid or not paid, nor did they attempt to quantify in any way what they claimed they were owed.

The Court directed plaintiffs to submit additional papers to support the inquest damages request. (See Dkt. No. 12: 11/2/10 Order.) In response, plaintiffs filed a brief and supplemental affidavits from each of the plaintiffs. (Dkt. No. 14: Pls. Br. & 11/24/10 Affs.) Plaintiffs' supplemental affidavits stated that they worked for defendants in 6-8 hour shifts, 4-5 shifts

a week. (11/24/10 Alejo, Bakal & Marmol Affs. ¶ 4.) Alejo worked approximately 200 shifts, Bakal and Marmol worked approximately 150 shifts. (Id.) Alejo, Bakal and Marmol worked "between 32 and 40 hours a week." (Id.) Plaintiff Alejo gave five specific examples, and Bakal six examples, of tips left by customers and the portion that defendants gave them. (11/24/10 Alejo Aff. ¶¶ 15-20; 11/24/10 Bakal Aff. ¶¶ 15-21.) Instead of tips, defendants sometimes paid plaintiffs $10 to $15 an hour. (11/24/10 Alejo, Bakal & Marmol Affs. ¶ 14.)

After reviewing plaintiffs' supplemental submissions, the Court requested further information from plaintiffs, as follows:

> The Court requires plaintiffs' counsel to prepare an Excel spreadsheet or similar chart showing how much each plaintiff is requesting for tips, minimum wage, retaliation (reduced shifts), statutory penalties, etc. In addition, to be entitled to attorneys' fees, plaintiffs' counsel must submit contemporaneous time records and justify his hourly rate.

(Dkt. No. 15: 11/29/10 Order.) In response, plaintiffs' counsel submitted a chart, and explained in the cover letter that:

> We have prepared a spreadsheet that shows the unpaid wages and tips Plaintiffs Carlos Alejo, David Bakal, and Joselina Marmol are owed during the time that they each worked for the Defendants. These calculations are based upon the affidavits previously submitted and the receipts attached as exhibits. Specifically, we have assumed that for every five-shift week, the Plaintiffs worked two private party shifts and three regular meal shifts. During each private party shift, the Plaintiffs should have received $300.00 in tips and during each regular meal shift, the Plaintiffs should have received $100.00 in tips. Thus, each week the Plaintiffs should have received $900.00 in tips/wages. However, during each week the Plaintiffs received only 40%, or $360, of the amount due to them. Thus, as shown in the attached spreadsheet, the Plaintiffs are owed an additional $540.00. Moreover, as shown in the attached spreadsheet and discussed in the memorandum submitted on November 24, 2010, Plaintiffs are entitled to liquidated damages equal to the amount of unpaid wages. Accordingly, Plaintiffs are entitled to $163,080 in damages from the Defendants.

(Dkt. No. 17: 12/15/10 Weisenberg Letter to Court.) Plaintiffs' counsel added that he also attached "a spreadsheet showing the amount of attorney hours incurred to date," and requested $32,525 in attorneys' fees. (Id.) The attached chart was not contemporaneous and showed hours spent by category, not by the date incurred. (Id., attached Attorneys' Fees Chart.) Nor did the cover letter or chart contain any explanation or justification for the attorneys' billing rates ($250 for Scott Eckert, $450 for Bruce Raskin, and $350 for Ronald Weisenberg). (Id.)

Defendants did not submit any papers in opposition to the inquest, and the time to do so has passed.

## ANALYSIS

### A. Applicable Legal Standards

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct. See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward

with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."); Grochowski v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003); Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002), cert. denied, 546 U.S. 933, 126 S. Ct. 415 (2005); Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002); Reich v. Southern New Eng. Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *3 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.).[2/]

As to tips, under New York Labor Law, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Labor Law § 196-d; see, e.g., Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *3 (S.D.N.Y Sept. 30, 2010) (Chin, C.J.) ("New York law provides that an employer may not demand or accept 'directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.'"); Ting Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071,

---

[2/] See also, e.g., Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388-89 (E.D.N.Y. 2007); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *23-24 (S.D.N.Y. Feb. 1, 2007); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 332-33 (S.D.N.Y. 2005); Mascol v. E & L Transp. Inc. , 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005); Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002); Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), aff'd as modified on other grounds, 66 F. App'x 261 (2d Cir.), cert. denied, 540 U.S. 1047, 124 S. Ct. 807 (2003); Cao v. Chandara Corp., 00 Civ. 8057, 2001 WL 34366628 at *4-5 (S.D.N.Y. July 25, 2001); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 624-25 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

2009 WL 289653 at * 5 (S.D.N.Y. Jan 30, 2009) (Peck, M.J.), report & rec. adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *20-21, 25 (S.D.N.Y. Feb. 1, 2007) (Under New York Labor Law, plaintiffs are entitled to recover "the amount of tips that the defendants illegally retained for themselves."); Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 231 (S.D.N.Y. 2002); Ayres v. 127 Rest. Corp.,12 F. Supp. 2d 305, 307-09 (S.D.N.Y. 1998) (Chin, D.J.).

Under the FLSA, an employer may use a tip credit against the federal minimum wage, but may not do so if there is a tip pool that is not compliant with the FLSA. 29 U.S.C. § 203(m);[3/] See, e.g., Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 WL 851749 at *14 (S.D.N.Y.

---

[3/] That statute states, in relevant part:

> . . . . In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
>
> > (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> >
> > (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m).

Mar. 30, 2006) (Lynch, D.J.) ("[E]mployers are not merely barred from taking the tip credit if they share in the tip pool, but they are barred from taking the tip credit if any person who does not 'customarily and regularly receive tips' shares in the tip pool."); Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d at 230 ("Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips."); Ayres v. 127 Rest. Corp., 12 F. Supp. 2d at 308-09 (Restaurant illegally took a "tip credit" against wait staff's hourly wage during period that general manager, who was not "an employee 'who customarily and regularly receive[d] tips'" under FLSA, received share of wait staff's tip pool, and thus tips received by wait staff during that period could "'not be considered as part of wages paid to them for purposes of satisfying [restaurant]'s minimum wage obligations'" under FLSA.). Moreover, "[t]o be eligible for the [FLSA] tip credit, . . . the employer must first notify the employees of its intention to include tip income when calculating wages actually paid for minimum wages purposes." Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391 at *2.

**B. Application of The Standards to This Case**

The facts established in the complaint and plaintiffs' affidavits make clear that defendants did not pay plaintiffs the applicable minimum wage, that defendants never told plaintiffs that tips would be part of their minimum wages, and that the tip "pool" (i.e., the unilateral decision by defendants to give plaintiffs only a portion of customer tips) violated the FLSA and New York Labor Law. Computation of plaintiffs' damages, however, is a different matter.

In many cases, plaintiffs prevail by presenting records, or recollection, that they typically worked "X" hours per week but were paid less than the prevailing minimum wage or

overtime wage rate. (See cases cited at pages 5-6 above.) Here, while plaintiffs' affidavits stated the number of shifts they worked per week, they did not identify how many were private party shifts, nor how much they should have received in tips during each private party shift and during each regular meal shift. (See Dkt. No. 14: 11/24/10 Alejo, Bakal and Marmol Affs.; pages 3-4 above.) That missing information is the key to plaintiffs' damages chart, Dkt. No. 17. (See page 4 above.)[4/] And while plaintiffs Alejo and Bakal provided some specific examples of tips withheld (see page 4 above), the Court is unable to see a general pattern from the less than one dozen examples.

The Court therefore must compute plaintiffs' damages without help from plaintiffs' counsel. The Court has no way on this record to even "guesstimate" the amount of tips plaintiffs should have received. The only thing the Court can do is award plaintiffs the hourly minimum wage (with no credit to defendants for the tips that plaintiffs did receive).[5/]

**Alejo**: Plaintiff Alejo seeks $30,780 in unpaid wages. (Dkt. No. 17: Unpaid Wages/Tips Chart.) Alejo worked from March 20, 2008 to March 23, 2009 (see page 3 above), or 52 weeks. All of the plaintiffs worked 32-40 hours per week (see pages 3-4 above); the Court will use 35 hours for these damage calculations. Eighteen weeks should be calculated using the FLSA

---

[4/] Plaintiffs' counsel's letter also states that "during each week the Plaintiffs received only 40%" of the tip amounts (Dkt. No. 17, quoted on page 4 above), while plaintiffs' brief states that "the Defendants generally took for themselves about fifty percent of the tips given to the Plaintiffs by the customers" (Dkt. No. 14: Pls. Br. at 3).

[5/] This approach also does not give defendants the benefit of the $35 in cash for lunch shifts that plaintiffs were paid. (See page 2 above.) The Court, however, has no way to determine how many lunch shifts plaintiffs worked each week.

minimum wage of $5.85 per hour, while the remaining 34 weeks are calculated at $6.55 per hour. (See page 2 n.1 above.)[6] Alejo thus is entitled to damages as follows:

| | | |
|---|---|---|
| 18 weeks x 35 hours x $5.85 | | $ 3,685.50 |
| 34 weeks x 35 hours x $6.55 | | 7,794.50 |
| | Alejo Total | $ 11,480.00 |

**Bakal**: Plaintiff Bakal seeks $18,360 in unpaid wages. (Dkt. No. 17: Unpaid Wages/Tips Chart.) Bakal worked for defendants from July 2008 until February 23, 2009. (See page 3 above.) Using the week beginning July 27, Bakal worked for defendants for 31 weeks. Bakal is entitled to damages as follows:

| | |
|---|---|
| 31 weeks x 35 hours x $6.55 | $ 7,106.75 |

**Marmol**: Plaintiff Marmol seeks $32,500 in unpaid wages. (Dkt. No. 17: Unpaid Wages/Tips Chart.) Marmol worked for defendants from July 26, 2008 until November 26, 2008. (See page 3 above.)[7] Thus, Marmol worked for defendants for 18 weeks, and Marmol's damages are as follows:

| | |
|---|---|
| 18 weeks x 35 hours x $6.55 | $ 4,126.50 |

---

[6] While the New York minimum wage was higher (see page 2 n.1 above), plaintiffs are entitled to greater statutory liquidated damages under the FLSA than under New York law (see page 11 below), so the Court employs the federal minimum wage rate.

[7] Marmol's 11/24/10 Affidavit, however, states that she worked for defendants from "approximately January 2008 to February 2009." (Dkt. No. 14: 11/24/10 Marmol Aff. ¶ 3.) There is no explanation for this discrepancy, and the Court will use Marmol's original dates.

**C. Liquidated Damages and Attorneys' Fees**

Under the FLSA, plaintiffs are entitled to liquidated damages of 100%. 29 U.S.C. § 216(b); see, e.g., Kopec v. GMG Const., No. 09-CV-2187, 2010 WL 3925210 at *3 (E.D.N.Y. Sept. 20, 2010) ("The FLSA entitles Plaintiffs to liquidated damages in an amount equal to 100% of the amount owed for minimum wage and overtime violations . . . ."), report & rec. adopted, 2010 WL 3909273 (E.D.N.Y. Sept. 30, 2010); Vasquez v. Ranieri Cheese Corp., No. 07-CV-464, 2010 WL 1223606 at *18 (E.D.N.Y. Mar. 26, 2010) ("FLSA entitles an employee to recover an amount equal to the unpaid wages (i.e., an additional 100% of the unpaid wages awarded) in the form of liquidated damages."); Dong v. CCW Fashion Inc., 06 Civ. 4973, 2009 WL 884680 at *4 (S.D.N.Y. Feb. 19, 2009) ("The FLSA allows for an additional 100% of the amount owed for minimum wage and/or overtime violations, which means that those amounts are doubled."), report & rec. adopted, 2009 WL 884668 (S.D.N.Y. Apr. 1, 2009); Ting Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071, 2009 WL 289653 at *7 (S.D.N.Y. Jan. 30, 2009) (Peck, M.J.), report & rec. adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009).[8/] Thus, plaintiffs are entitled to liquidated damages as follows:

---

8/ Under New York Labor Law, plaintiffs only would be entitled to liquidated damages of 25% of actual damages. N.Y. Labor Law §§ 198(1-a), 663; see, e.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 264 (2d Cir. 1999) ("Under New York's Labor Law, when an employer willfully refuses to pay an employee, 'the court shall allow such employee . . . an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.'"), cert. denied, 528 U.S. 1119, 120 S. Ct. 940 (2000); Kopec v. GMG Const., 2010 WL 3925210 at *3 ("The NYLL [§ 663] awards 25 percent of the total wages owed."); Vasquez v. Ranieri Cheese Corp., 2010 WL 1223606 at *18 ("New York state law also allows for an award of premium damages equal to 25% of the unpaid wages . . . ."); Dong v. CCW Fashion Inc., 2009 WL 884680 at *4 ("New York Labor Law allows for an additional 25% for 'willful' non-payment of wages . . . ."); Ting Yao Lin v. Hayashi Ya II, Inc., 2009 WL 289653 at *7; Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *5 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

| | |
|---|---|
| Alejo | $11,480.00 |
| Bakal | $ 7,106.75 |
| Marmol | $ 4,126.50 |

The FLSA and New York Labor Law provide for attorneys' fees and costs to a successful plaintiff. 29 U.S.C. § 216(b); N.Y. Labor Law § 198(1-a); see also, e.g., Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 151 (2d Cir. 2008); Liu v. Jen Chu Fashion Corp., 00 Civ.4221, 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

Plaintiffs' original inquest papers requested "reasonable attorney's fees" (Dkt. No. 14: Pls. Br. at 6), but did not quantify the amount of fees, nor submit any supporting affidavit from counsel as to fees (id.). In response, this Court's order gave plaintiffs a second chance, reminding plaintiffs' counsel that "to be entitled to attorneys' fees, plaintiffs' counsel must submit contemporaneous time records and justify his hourly rate." (Dkt. No. 15: 11/29/10 Order, emphasis added; see also page 4 above.) In response, plaintiffs' counsel merely submitted a letter (not an affidavit), to which was "attached . . . a spreadsheet showing the amount of attorney hours incurred to date" and seeking $32,525 in attorneys' fees. (Dkt. No. 17: 12/15/10 Letter.) That spreadsheet did not contain contemporaneous time records, but instead listed categories, for example, "Preparing Default Motion Documents/Affidavits," 23 hours. (Dkt. No. 17: 12/15/10 Letter, Attorneys' Fees Chart.) As the Second Circuit recently reiterated, "the controlling case in this Circuit is New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983). Carey requires that all applications for attorney's fees be supported by contemporaneous records . . . ." Scott v. City of

N.Y., Nos. 09-3943-cv(L), 09-5232(XAP), --- F.3d ---, 2010 WL 4869766 at *2-3 (2d Cir. Dec. 1, 2010) ("Carey establishes a strict rule from which attorneys may deviate only in the rarest of cases.").

This is not a "rare case" allowing deviation from Carey's otherwise mandatory requirement of contemporaneous time records. This Court already gave plaintiffs' counsel a second chance, directing plaintiffs' counsel to submit contemporaneous time records, but all they submitted was a letter (not affidavit) with a chart listing hours by task, not contemporaneous time records. Accordingly, the Court should not award plaintiffs or their counsel any fees.

## CONCLUSION

For the reasons stated above, the Court should enter judgment against defendants for each plaintiff, as follows:

| | |
|---|---|
| Alejo | $ 22,960.00 |
| Bakal | $ 14,213.50 |
| Marmol | $ 8,253.00 |

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1350, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge

McMahon (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: New York, New York
December 17, 2010

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to: Ronald B. Weisenberg, Esq. (ECF & Mail)
Darna Restaurant and Yehouda Avital (Regular & Certified Mail)
Judge Colleen McMahon

H:\OPIN\ALEJO